JOHN QUINN, Appellant, *v.* THOMAS H. WHITNEY et al.,
Respondents.

*Contract — when executory contract can be assigned.*

1. The general rule is that an executory contract not necessarily
personal in its character, which can, consistent with the rights and
interests of the adverse party, be sufficiently executed by the
assignee, is assignable in the absence of agreement in the contract.
(*N. Y. Bank Note Co.* v. *Hamilton B. N. E. & P. Co.*, 180 N. Y. 280,
followed.)

2. Where a contract provided that upon a sale of treasury stock
of a corporation held by a trustee, he should sell on account of a
director one share for every five shares sold for the benefit of the
treasury up to a certain amount, such director cannot be held to
have waived his rights thereunder, because, acting as director as
was his duty, he participated in the sale of the treasury stock with-
out insisting, at that time, upon such rights; nor does the fact that
he tried to sell his stock, so long as he did not sell it, operate as a
waiver of such rights.

*Quinn* v. *Whitney*, 137 App. Div. 106, reversed.

(Submitted January 25, 1912; decided February 2, 1912.)

APPEAL from an order of the Appellate Division of the
Supreme Court in the second judicial department, entered
March 31, 1910, reversing a judgment in favor of plain-
tiff entered upon a decision of the court at a Trial Term,
a jury having been waived, and granting a new trial.

The nature of the action and the facts, so far as mate-
rial, are stated in the opinion.

*Henry C. Burnstine* for appellant. Plaintiff's assignor
never in any way "waived" his rights under the con-
tract in suit. (*Ripley* v. *Æ. Ins. Co.*, 30 N. Y. 136;
*Owen* v. *F. J. S. Ins. Co.*, 57 Barb. 518; *People* v. *Man-
hattan Co.*, 9 Wend. 351; *Draper* v. *O. C. F. R. Assn.*,
19 N. Y. 12; *Goulds Mfg. Co.* v. *Munckenbeck*, 20 App.
Div. 612; *Clark* v. *West*, 125 App. Div. 654; *McKnight*

v. *Dunlop*, 5 N. Y. 537.) The contract in suit and all rights under it were assignable. (*Zabriskie* v. *Smith*, 13 N. Y. 322, 333; *Haight* v. *Hayt*, 19 N. Y. 464, 474; *Devlin* v. *Mayor, etc.*, 63 N. Y. 8; *N. E. Iron Co.* v. *El. R. Co.*, 91 N. Y. 153; *R. L. Co.* v. *S. & P. Co.*, 135 N. Y. 209; *Chambers* v. *Lancaster*, 160 N. Y. 342; *N. Y. B. N. Co.* v. *H. B. N. Co.*, 180 N. Y. 280; *Francisco* v. *Smith*, 143 N. Y. 488; *L. W. P. Co.*, v. *S. W. P. Co.*, 59 App. Div. 353.)

*Charles E. Lydecker* for respondents. The acts of plaintiff's assignor in making an option sale of all the stock on April 7, 1908, in conjunction with all stock controlled by him and the defendants, including the treasury stock, amounted to a complete waiver of the performance of any obligation under the old contract between the parties. (*N. Y. Rubber Co.* v. *Rothery*, 107 N. Y. 310; *Gearty* v. *Mayor, etc.*, 171 N. Y. 72; *Shapley* v. *Abbott*, 42 N. Y. 443.)

Willard Bartlett, J. In 1907 the defendants organized a corporation under the laws of the state of Maine known as the San Gregorio Mining & Railway Company, with a capital stock of $1,000,000 divided into shares of one dollar each. All of the capital stock except 500 shares appears to have been issued to the defendants in consideration of the sale and transfer by them to the corporation of an option which they owned upon certain mining property in Mexico and for a certain railway allied to such property. The defendants set aside 500,000 shares of the stock so issued to them to be sold at such price as the board of directors might determine for the benefit of the treasury of the corporation. A block of 174,000 shares of the stock thus issued for the option was sold to Arthur Starr Moore for $8,700 which he paid. All these transactions took place pursuant to an agreement in writing between Moore and the defendants Thomas H.

Whitney and W. Murdoch Wiley, dated July 23, 1907. That agreement after providing that 500,000 shares of the stock should be issued to a trustee to be sold for the benefit of the corporation further provided that the defendant Thomas H. Whitney should be fiscal agent to conduct the sales; and that upon any sale or sales of said stock the said fiscal agent should sell for and on account of Moore one share for every five shares of the stock set aside for the benefit of the treasury until the net proceeds of the sale for Moore's account should equal the amount which he had paid for the stock issued to him, to wit, $8,700.

The plaintiff sues as the assignee of Moore, alleging a breach of this provision of the contract of July 23, 1907. The trial court found that pursuant to the terms of the agreement the defendant Whitney was duly appointed fiscal agent of the San Gregorio Mining & Railway Company and that he sold 77,500 shares out of the 500,000 shares of stock set aside to be sold for the benefit of the corporation and received $8,125 therefor. By the terms of the agreement 12,917 shares of Moore's stock should have been taken and used as part of the 77,500 shares thus sold by the fiscal agent and Moore should have received $1,354.17 out of the $8,125 paid to the fiscal agent on the purchase; but in violation of the agreement, as the trial judge found, none of the stock belonging to Moore was used for the purpose of the transaction and he received no part of the purchase price.

Moore sold 12,500 shares of his stock to the plaintiff and on April 30, 1908, executed to the plaintiff an assignment of all his rights under the contract of July 23, 1907. The plaintiff thereafter notified the defendants of this assignment and demanded payment from them of the sum of $1,354.17, being one-sixth of the amount received upon the sale of the treasury stock, at the same time tendering to the defendants 12,917 shares of the stock formerly belonging to Moore, being one-sixth of the number

of shares sold by the fiscal agent. The defendants refused to pay the money or accept the stock, and the plaintiff thereupon sold the stock for their account at public auction for the sum of $165.40. This action was brought to recover the balance with interest, amounting to $1,260.74. The substance of the defense was that Moore by his transactions with the corporation and his participation in the sale of the treasury stock and his dealings with his own stock had precluded himself from claiming any rights under the contract, and waived all rights thereto, and that the assignment by Moore to the plaintiff was made with full knowledge of all of Moore's acts having this effect. The case was tried before a jury, and at the conclusion of the evidence on both sides both parties moved for the direction of a verdict. The trial judge thereupon took the case under advisement and subsequently made findings and directed judgment in favor of the plaintiff. This judgment has been reversed by the Appellate Division on the ground, as we gather from the opinion, that Moore participated in the sale of the treasury stock without insisting upon his rights under the contract, and thereby must be held to have waived those rights.

No rulings upon the admission or exclusion of evidence are assailed, and as the case came before the Appellate Division the only questions of law presented for consideration were (1) whether the findings of fact were sufficient to sustain the conclusions of law and (2) whether there was an utter lack of evidence to sustain any conclusion of fact.

It appears from the findings that the principal sale of treasury stock was made to Mr. Clarkson Clothier of Philadelphia, to whom an option was given which he subsequently exercised to the extent of taking 75,000 shares. At the same time Moore gave Clothier an option upon his own stock to the extent of 161,500 shares. Clothier, however, did not take any of Moore's stock under this

option, and because Moore as one of the directors of the company aided in putting Clothier in a position thus to take the treasury stock of the corporation rather than his own the Appellate Division appears to have been of the opinion that he parted with all his rights as against the defendants under the contract. We do not see why any such effect should be given his action in that respect.

The agreement in effect bound the defendants when any stock was sold by the fiscal agent to a stranger to take from Moore one-sixth of such stock and pay him therefor the price paid by the purchaser; and the defendants were bound to continue to do this until the sales for Moore's account realized $8,700. In other words, the defendants undertook by the agreement with Moore that he should share in the benefit of any sales of stock made by the fiscal agent of the corporation to the extent of one-sixth until he had received back the amount of his investment, Moore being bound, of course, to furnish one-sixth of any stock which should be sold by the fiscal agent.

Moore was a director of the corporation, and as such participated in the transactions which resulted in the sale of the corporate stock to Clothier; indeed, there could not be any sales of treasury stock as contemplated by the contract without his knowledge, as all of that stock was placed in his hands as trustee.

Moore's relations to the corporation, however, as director were entirely distinct from his relations to the defendants under the contract. As a director, having in view the purposes and prosperity of the corporation, he was bound to facilitate the sale of its treasury stock to outsiders. This he did by participating in the transaction with Clothier. He was bound to do all that he did in promoting the sale of the stock, irrespective of the contract between him and the defendants. He was entitled to rely upon the presumption that the defendants would fulfill the con-

tract on their part, and to expect that in case his stock to the extent of one-sixth was not actually taken and transferred to the purchasers the defendants would, nevertheless, pay him an amount equivalent to one-sixth of the total purchase money received from Clothier and take from him an equivalent proportion of his stock.

There is no finding of any waiver by Moore of his rights under the contract, and we cannot agree with the Appellate Division in holding that Moore abandoned any claim against the defendant under the contract by reason of the fact that he helped to arrange the sales to Clothier.

In substance and essence, the effect of the agreement was to give Moore the right to share in any sale made by the corporation under this plan to the extent of one-sixth, and it was of no vital importance whatever whether the particular certificates sold were exclusively those of the corporation or of Moore. It would be unreasonable to say that in case a sale of a hundred shares were made under this contract it would be necessary to deliver to the purchaser a certificate of 83⅓ shares of the treasury stock and 16⅔ shares of Moore's stock, for the purchaser might insist on having a single certificate of the hundred shares. It is, therefore, plain that the assent of Moore to the delivery to Clothier of the treasury stock instead of his own did not operate as any waiver. Nor did the agreement preclude Moore from selling his stock to anybody regardless of the agreement. If he actually did sell it, then he would have no right under the agreement to call the defendants to account because the delivery of his stock to them would be a prerequisite to the carrying out of the agreement and he would have no stock to deliver, but the fact that he tried to sell it by giving an option, as long as he did not sell it, could not be a waiver.

The objection that the claim of Moore under the contract of July 23, 1907, was not assignable is well answered in the opinion of the learned judge at Trial Term. He points out that the defendants took $8,700 of Moore's

money for 174,000 shares of the corporate stock under the agreement to repay that sum by turning over to Moore the proceeds of one share out of every six shares of certain other stock which they should subsequently sell, being entitled to receive from Moore in that event out of his stock one-sixth of the total number of shares sold. This was the effect of the obligation assumed by the defendants. There can be no doubt that the rights of a party to such an express contract would be assignable. "The general rule is that an executory contract not necessarily personal in its character, which can, consistent with the rights and interests of the adverse party, be sufficiently executed by the assignee, is assignable in the absence of agreement in the contract." (*N. Y. Bank Note Co.* v. *Hamilton B. N. E. & P. Co.*, 180 N. Y. 280, 291, and cases cited.) At the time Moore assigned to Quinn, the present plaintiff, it is true that Moore's stock was in escrow under the option to Clothier, and so it was when Clothier took the treasury stock which he decided to take under the other option. Nevertheless, Moore then had the right to have one-sixth of the sale to Clothier made up out of his individual stock in case Clothier did not take his individual stock also; and this right was assignable to the plaintiff and enforceable by him provided he had stock enough to amount to one-sixth of the sale to Clothier. The finding is that he did have that amount and duly tendered it.

The order of the Appellate Division should be reversed and the judgment of the Trial Term affirmed, with costs in both courts.

CULLEN, Ch. J., HAIGHT, VANN, HISCOCK and CHASE, JJ., concur; GRAY, J., absent.

Order reversed, etc.