BOARD OF TRADE OF CITY OF CHICAGO v. TUCKER et al.

(District Court, W. D. New York. November 29, 1913. On Motion for Rehearing, January 8, 1914.)

1. INJUNCTION ⚖⟶229—PUNISHMENT OF VIOLATIONS—JURISDICTION.
   The District Court had jurisdiction to punish, as for a contempt of court, a violation of an injunction of the former Circuit Court.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 496–501; Dec. Dig. ⚖⟶229.]

2. INJUNCTION ⚖⟶223—EXCHANGES—QUOTATIONS OF PRICES—VIOLATION.
   Where a Board of Trade, by contracts with telegraph companies, authorized them to make public, and sell to persons desiring them, quotations telegraphically received at intervals of not less than 10 minutes, an injunction restraining a broker from using, selling, or distributing such Board's quotations applied to all quotations except such as the telegraph companies had a right under their contracts to distribute, and the injunction was violated by furtively carrying away or telephoning to his office for distribution to his customers and branch offices, from the office of a subscriber entitled to receive quotations, either the continuous quotations furnished such subscriber or single quotations at intervals of 10 minutes.
   [Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 448–473; Dec. Dig. ⚖⟶223.
   Quotations of prices and transactions on exchanges, see note to Sullivan v. Postal Telegraph Cable Co., 61 C. C. A. 2.]

⚖⟶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

**3. INJUNCTION** ⊚⇒230—EXCHANGES—QUOTATION OF PRICES—VIOLATION.

On a motion to punish a broker for violating an injunction restraining him from using, selling, or distributing the quotations of a Board of Trade, evidence *held* sufficient to show a violation.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 502–516; Dec. Dig. ⊚⇒230.]

**4. INJUNCTION** ⊚⇒232—PUNISHMENT OF VIOLATIONS—CHARACTER OF PUNISHMENT.

The violation by a broker of an injunction restraining him from using, selling, or distributing the quotations of a Board of Trade was a contempt of court, within that class of contempts the punishment for which should be remedial, and for the purpose of reimbursing plaintiff for the expense of bringing the violation to the attention of the court, and not punitive, to vindicate the authority of the court.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 519–528; Dec. Dig. ⊚⇒232.]

**5. INJUNCTION** ⊚⇒232—PUNISHMENT OF VIOLATIONS—AMOUNT OF FINE.

Where the record on a motion to punish defendant for violating an injunction was unnecessarily voluminous, and the expenses were so large that a fine or penalty commensurate therewith would be inordinate, such a fine as would completely reimburse plaintiff would not be imposed.

[Ed. Note.—For other cases, see Injunction, Cent. Dig. §§ 519–528; Dec. Dig. ⊚⇒232.]

In Equity. Suit by the Board of Trade of the City of Chicago against Henry C. Tucker and others. On motion to punish the defendant named for contempt of court. Motion granted, and defendant fined. Order affirmed 221 Fed. 305, —— C. C. A. ——.

See, also, 202 Fed. 288.

Henry S. Robbins, of Chicago, Ill., for complainant.

James O. Moore, Dana L. Spring, and George Clinton, all of Buffalo, N. Y., for defendants.

HAZEL, District Judge. [1] This is a motion to punish the defendant Henry C. Tucker for contempt of court. It appears that in January, 1906, the Circuit Court (now the District Court) of this district made its final decree herein enjoining defendants from receiving, using, or distributing certain market quotations without the consent of the complainant, the Board of Trade of the city of Chicago, and a writ of injunction pursuant thereto was issued. The decree was based upon the property rights of the complainants in the quotations collected by it on its exchange, and upon its right to control their use by others and to equitably restrain invasion of such rights. A plea in abatement, objecting to the jurisdiction of this court, was interposed by the defendant; but such plea is without merit, and is therefore overruled.

[2] Proceeding to the merits: The defendant Henry C. Tucker, whose contumacious acts alone are herein involved, denies having violated the terms of the injunction, and asserts that his dealings in stocks and bonds were actually executed on the Pittsburgh Stock and Produce Exchange; that continuous quotations of the complainant were not received, used, or distributed by him or through his agency; that his market quotations were obtained through the so-called 15-

minute ticker service, the news gossip service, and from single quotations of the Chicago Board of Trade received at intervals of not less than 10 minutes, and after such quotations were dedicated to the use of the public; and he claims that the final decree herein, properly construed, merely enjoins the defendants from using continuous quotations of the complainant, as distinguished from single quotations, which have ceased to be its private property, and which by reason of acquiescence have been surrendered to the public.

Referring to the proper interpretation of the injunction and the decree, the relevant portions of which enjoin the defendants from using, selling, or distributing, directly or indirectly, "the quotations of the complainant, or any of them," it will be found that the words "continuous quotations" are not contained therein, and, as there are no limitations on the character of the quotations, it must be assumed, I think, that the broader relief embodied in the word "quotations" was justified or warranted by the facts. In support of this view mention need only be made of the existing arrangement between the complainant and the telegraph companies authorized to distribute the quotations under special contracts with the customers, by which they were permitted to make public and sell to persons desiring them quotations telegraphically received at intervals of not less than 10 minutes. It was not the purpose of the injunction to enjoin simply the use of a series of quotations received without interruption, but also the use of any or all quotations of the complainant, save such as the telegraph companies had the right under their contracts with the complainant to distribute.

In the conduct of his business, in connection with a so-called 15-minute ticker service and a news gossip service, the defendant admittedly received at intervals of 10 minutes apart and posted quotations originating with the complainant, which said defendant procured from some other broker or brokers, who had the legal right to post continuous quotations, and was thereby enabled to post such quotations at his office at Buffalo, and to telegraphically communicate such posted quotations and continuous quotations to his customers and subscribers doing business in other localities. In other words, the defendant, by furtively carrying away or telephoning to his own office from the office of another broker, who lawfully received and posted complainant's continuous quotations, either the continuous quotations, or even single quotations received at 10-minute intervals during the market hours in connection with his ticker and news service, was enabled to distribute quotations which were practically continuous quotations, and to benefit by the distribution and posting of quotations to which he had no lawful right; and such procurement and use were, in my judgment, a violation of the terms of the injunction, which by no process of interpretation are thought to leave open to the defendants the right to secretly obtain that which the telegraph companies were forbidden by their contracts to give. A construction must be given the decree which will effectively protect the complainant in its property rights, and not one which will deprive it of the full measure of protection to which it was entitled.

[3] That the quotations which the defendants have been restrained by order of this court from using and distributing are actually used and distributed by Henry C. Tucker to his subscribers and customers is shown with reasonable certainty by complainant's witnesses Burmeister and Whiteside, experienced telegraph operators, who testified that they visited various stockbrokers' offices in different cities, which had direct telegraphic communication with the office of the defendant at Buffalo, and that they heard various of the quotations which were posted on blackboard in the said brokers' offices as they were received over the wire connected with the office of the defendant. They swear that such quotations were not the 15-minute ticker quotations distributed in the first instance by the telegraph companies under their several contracts with complainant, and such testimony, considering the proofs in their entirety, is persuasive of the view that the said quotations were practically the continuous quotations originating in the Chicago Board of Trade, which the defendants by a decree of this court were prohibited from using. The evidence of Burmeister and Whiteside is criticized on the ground that they are informers in complainant's employ; but in view of the corroborating circumstances relating to the defendant's business, and the manner in which it is conducted as disclosed in the record, their testimony on that account merely ought not be disregarded or rejected, even though it is perhaps not entirely free from criticism.

Considerable testimony was given by complainant to show that the defendant Henry C. Tucker did not, as claimed by several of the witnesses in defendant's employ, but sworn by the complainant, execute his orders to buy and sell stock on the Pittsburgh Stock and Produce Exchange; but I conceive it to be unnecessary to examine the testimony in relation to such claims, or to pass upon the question of whether or not such exchange was a mere pretense, as claimed by complainant. It is enough that the violation of the injunction is thought sufficiently established by the admission of the defendant in connection with the testimony of the witnesses Burmeister and Whiteside, to which reference has already been made. In McDearmott Commission Co. v. Board of Trade of City of Chicago, 146 Fed. 961, 77 C. C. A. 479, 7 L. R. A. (N. S.) 889, 8 Ann. Cas. 759, decided by the Circuit Court of Appeals for the Eighth Circuit, a case wherein the defendant also claimed that the publication of quotations on the instant they were received by telegraph operated as a surrender or dedication to the public of the property rights of the complainant, the court held that such posting did not make knowledge of the quotations general or accessible to the public as a right, or render them of no further value; and the opinion said:

"The publication relied upon consists altogether in the posting of the quotations by those who subscribed for them. This is done in places which, by reason of their ownership and use, are private. Its controlling purpose is that of stimulating and facilitating trade with the subscriber, and not of conferring a benefit upon the public. It implies, of course, a permission that in dealing with the subscriber his patrons may use the information which the quotations contain, but not that they may be copied and taken away or reproduced and used elsewhere."

[4, 5] So in the present case the defendant had not the legal right to copy either single or continuous quotations posted by complainant's subscribers, or to telephone them to his office at intervals of 10 minutes for immediate distribution to his customers and branch offices, and in so doing he violated the terms of the injunction and committed a contempt of court, for which he may be prosecuted at the instance of complainant. His contempt of this court, under the doctrine of Gompers v. Buck Stove & Range Co., 221 U. S. 418, 31 Sup. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874, and In re Kahn et al., 204 Fed. 581, 123 C. C. A. 107, decided by the Circuit Court of Appeals for this circuit, falls within that class which may be treated as remedial, for the benefit of the plaintiff; and though a careful reading of Merchants' Stock & Grain Co. v. Board of Trade of the City of Chicago, 201 Fed. 20, 120 C. C. A. 582, would seem to indicate that in such a case as this the punitive feature to vindicate the authority of the court may also be considered, still, as Judge Noyes in the Kahn Case lays stress upon the nature of the proceeding, as to whether it was prosecuted by the government as a criminal proceeding or simply by a person in interest to indemnify him for the disobedience, I am persuaded that a dual punishment should not be imposed, but simply one to partially reimburse the plaintiff for the expenses of bringing said violation of the said injunction order to the attention of this court; complete reimbursement being precluded in this case by the fact that the record is so unnecessarily voluminous and the expenses so large that a fine or penalty commensurate therewith would be inordinate.

It is my judgment that for his contempt defendant Henry C. Tucker be directed to pay a fine of $1,800 within 30 days from the entry of the order herein, for the benefit of the plaintiff. So ordered.

## On Motion for Rehearing.

After consideration of the additional briefs submitted, I make the following alteration in my original opinion. After the word "office," appearing in the eighth line from the bottom of page 5, I insert the words "at intervals of 10 minutes for immediate distribution to his customers and branch offices," leaving the remainder of the original opinion unchanged.