### A. B. DICK CO. v. FULLER.

(District Court, S. D. New York. March 12, 1914.)

Nos. 9–55.

1. CONTRACTS (§ 202*)—CONSTRUCTION—INVENTIONS—IMPROVEMENTS.

Where a contract required defendant to disclose promptly to plaintiff any and all inventions made or acquired by him during the life of the agreement and that defendant would not engage in the manufacture and sale of material or processes of the class or character illustrated by the inventions, to wit, stencil paper and processes and methods of preparing and using the same, without plaintiff's consent, no distinction should be drawn between the words "inventions" and "improvements," but the covenant should be construed as embracing any and all inventions relating to stencil paper and processes or methods for preparing, producing, and using it.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 918–928; Dec. Dig. § 202.*]

2. CONTRACTS (§ 117*)—ILLEGALITY—RESTRAINT OF TRADE.

A contract by which defendant agreed that during the operation thereof for a specified term he would not engage in the manufacture or sale of material or processes connected with the stencil paper trade was not objectionable as in restraint of trade, under the rule that a restraint not

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date. & Rep'r Indexes

larger than is requisite for the necessary protection of the party with whom the contract is made is not illegal.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 554–569; Dec. Dig. § 117.*]

3. CONTRACTS (§ 22*)—EXECUTION.—EVIDENCE.

Where a contract bound defendant to promptly disclose to plaintiff any and all inventions made or acquired by him during the life of the agreement with reference to stencil paper and processes of similar character, but did not require defendant to make any inventions or do any development work toward new inventions or improvements in stencil making, and thereafter plaintiff promised to compensate defendant if he was successful in inventing a stencil sheet. that did not require wetting, defendant having acted on such inducements and produced such a sheet, there was a valid contract to pay him reasonable compensation during the period he was so employed.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 67, 82–92, 104–108; Dec. Dig. § 22.*]

4. CONTRACTS (§ 312*)—MODIFICATION—REPUDIATION—SUIT FOR SPECIFIC PERFORMANCE.

Where complainant instituted suit for specific performance of a contract by which defendant agreed to disclose subsequent inventions and improvements in the stencil paper art, such suit did not constitute a repudiation by plaintiff of a modification of the contract by which plaintiff agreed to compensate defendant for services in successfully producing an improved stencil sheet which did not require wetting.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. § 1279½; Dec. Dig. § 312.*]

5. CONTRACTS (§ 22*)—MODIFICATION—BINDING CHARACTER—TIME.

Where defendant agreed to disclose to complainant subsequent inventions and improvements in the stencil paper art, but did not agree to make any improvements, and thereafter the contract was modified by complainant promising to compensate defendant if he should be successful in inventing a stencil sheet that did not require wetting, complainant's promise pursuant to such modification became binding when defendant commenced work in reliance thereon.

[Ed. Note.—For other cases, see Contracts, Cent. Dig. §§ 67, 82–92, 104–108; Dec. Dig. § 22.*]

In Equity. Suit for specific performance of a contract by the A. B. Dick Company against Louis E. Fuller. On final hearing. Decree for complainant. ·

See, also, 198 Fed. 404.

This is a suit to enforce specific performance of a contract between the parties and to restrain the breach thereof. The contract is dated May 12, 1911, and was to take effect upon the exercise by complainant of an option therein granted to purchase from defendant for $7,500 his 225 shares of stock in the Dermatpye Company; that company and one Dwight who owned the remaining shares of its stock also being parties to the contract. The option was duly exercised before it expired, thereby bringing into full force and effect the covenants in sections 8 and 9 of the contract upon which the present suit is based.

Under section 8 Fuller agreed to disclose "promptly" and "without further consideration" than that stated "any and all inventions" by him made or acquired, in whole or in part, before or during the life of the agreement, "in or relating to stencil paper and processes or methods for preparing, producing and using the same."

In section 9 Fuller also covenanted, during the operation of the contract, not to engage "directly or indirectly * * * or become interested in the

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

manufacture, use or sale of material or processes of the class or character illustrated by the inventions" just referred to.

On June 28, 1912, the A. B. Dick Company entered into a contract with the Rapid Addressing Machine Company, wherein the Rapid Company covenanted that for the period of 17 years it would make, sell, or use no stencil material of any kind whatsoever save in the form of cards for addressing machines, and that it would do all and every lawful act and thing within its power to assure that no such material by it sold or otherwise handled should be put to any use other than that just defined, to the end that no stencil material handled by it should be used or resold in competition with stencil material produced, sold or handled by the Dick Company. On its part the Dick Company agreed that it would, during the same period and depending upon the faithful performance by the Rapid Company of its covenants, make, use, or sell no stencil material of any kind or character whatsoever for use as cards for addressing machines, and that it would do all and every lawful act and thing within its power to assure that no such material by it handled should be used for the production of cards for addressing machines.

The original bill was demurred to. Judge Hand overruled the demurrer, expressly holding that Fuller's covenant to disclose all future inventions relating to stencil paper was valid but not passing upon the covenant not to engage in business. Subsequent to the contract of May 12, 1911, Fuller disclosed to complainant through his attorneys an improvement relating to curing stencil paper without exposure to light. His attorneys then stated: "Mr. Fuller has always felt obligated to advise the A. B. Dick Company of any actual improvements, strictly so called, on the Dermatype stencil. He considers this such an improvement." Defendant concedes that subsequent to the contract of May 12, 1911, he made an invention or inventions in or relating to stencil paper and processes or methods for preparing, producing, or using the same. Complainant demanded both orally and in writing the turning over of defendant's inventions. Defendant was willing to turn over any "improvement," and the position he assumed in his pleadings and on the trial was that section 8 was valid so far as it related to improvements, but that the inventions which he refused to disclose were not within the perview of section 8 of the contract.

Defendant set up violation of the Sherman Anti-Trust Law, in that in May, 1911, the A. B. Dick Company owned and controlled at least 90 per cent. of the wax stencil and stencil duplication business throughout the United States, and also challenged the validity of section 9 of the contract, contending that it amounted to unreasonable restraint and was so against public policy. He also alleged that after the contract of May 12, 1911, complainant agreed with defendant that, for and in consideration that he would invent a stencil paper that could be used without moistening, complainant would pay defendant a reasonable sum therefor, and that on or about October 31, 1911, and many times thereafter complainant promised and agreed with defendant that for and in consideration that defendant would do work for the benefit of complainant and particularly in investigating the possibility of inventing a stencil paper that could be used without moistening, and in experimenting for that purpose, the complainant would pay to the defendant a reasonable sum for such work. Defendant also alleges demand and refusal.

Walter C. Noyes and Samuel Owen Edmonds, both of New York City, for plaintiff.

Harry W. Mack, of New York City, for defendant.

HUNT, Circuit Judge (after stating the facts as above). Section 8 of the contract of May 12, 1911, when considered with relation to the thing or subject-matter involved—stencil paper and processes or methods for preparing, producing, and using the same—requires defendant without further consideration than was stated in the agreement to disclose promptly to the plaintiff any and all inventions made

or acquired by him during the life of the agreement, and to do certain other things not necessary to be here stated. For this covenant there was consideration and a limitation to the life of the whole agreement.

By section 9 the defendant agreed that during the operation of the agreement he would not engage in the manufacture or sale of material or processes of the class or character illustrated by the inventions in certain applications referred to in section 8, without the consent of the plaintiff.

[1] I cannot regard it as of vital importance to the suit that nice distinctions shall be drawn between the words "inventions" and "improvements." The covenant of section 8 embraces any and all inventions having relation to stencil paper and processes or methods for preparing, producing, and using the same. Earlier and later discoveries were stencil sheets adapted for the production of multiple copies, and there is direct relation in the subject-matter of the inventions last made to stencil paper; hence the comprehensiveness of the word "invention" includes such invention whether here called invention or improvement.

[2] The $7,500 paid as purchase price of the stock of the Dermatype Company was a substantial and presumably fair consideration for the covenants of the defendant to do those things required by sections 8 and 9 and other covenants of the agreement. As I read the cases it is not always illegal for one for a consideration to exclude himself for a time from making, using, or selling material or processes of a class or character of a particular kind. For example, where the purchaser of a thing to protect himself from the destruction of the thing bought agrees with the seller that he shall not use any new invention of his for producing a product which will in effect destroy the value of the property purchased, there is no restraint which will invalidate the contract. Aspinwall Mfg. Co. v. Gill (C. C.) 32 Fed. 697; Fowle v. Park, 131 U. S. 88, 9 Sup. Ct. 658, 33 L. Ed. 67; Mississippi Glass Co. v. Franzen, 143 Fed. 501, 74 C. C. A. 135, 6 Ann. Cas. 707. Nor is it illegal restraint where the restraint imposed is not larger than is requisite for the necessary protection of the party with whom the contract is made. Oregon Steam Navigation Co. v. Winsor, 20 Wall. 64, 22 L. Ed. 315.

The evidence goes to show effective competition with the Underwood Typewriter Company, and also that there are numerous other competitors. The license restrictions which attach to sales made by complainant do not violate the rules laid down by the Supreme Court in Henry v. Dick, 224 U. S. 1, 32 Sup. Ct. 364, 56 L. Ed. 645, Ann. Cas. 1913D, 880.

Some of the provisions of the contract between plaintiff and the Rapid Addressing Machine Company, dated June 28, 1912, together with the evidence of the acts of the plaintiff, seem to draw the case close to the line of violation of sections 1 and 2 of the Anti-Trust Law. U. S. Shoe Co. v. La Chapelle, 212 Mass. 467, 99 N. E. 289, Ann. Cas. 1913D, 715; Bauer v. O'Donnell, 229 U. S. 1, 33 Sup. Ct. 616, 57 L. Ed. 1041. On the other hand, the legal patent monopoly upon which I should say plaintiff's business has largely been built

up does not lead to the conclusion that monopoly and restraint of trade in contravention of law exist. Park v. Hartman, 153 Fed. 24, 82 C. C. A. 158, 12 L. R. A. (N. S.) 135.

[3] Was there a supplemental or new contract, or was there any agreement for compensation? My reading of the evidence satisfies me that there was no agreement of any kind and no intention to make any agreement modifying section 8 of the contract of May 12, 1911. Mr. Fuller covenanted, among other things, to disclose any and all inventions by him made or acquired during the life of the agreement. This I think is very clear. But while this is true, both Mr. Dick and Mr. Fuller well knew that under the contract there was no obligation whatsoever resting upon Mr. Fuller to make any investigations or to do any development work toward the making of inventions or improvements in stencil making. Mr. Dick felt, though, that a dry stencil sheet would be of decided value, and he was anxious to procure such. He was therefore very ready to listen to Mr. Fuller's suggestions of possible new inventions in that direction and to encourage him to put forth his energies toward perfecting such an improvement in the art. As stimulus for such exertion, Mr. Dick in June and October, 1911, gave Mr. Fuller to understand and meant to have him understand that if he was successful in inventing a stencil sheet that did not have to be wet and would disclose, as he was obliged to do, he would compensate him. Such compensation was afterwards well described by Mr. Dick in his letter of January 29, 1912, as "for working out improvements or new inventions for our (A. B. Dick Company's) benefit," and was not to be for the turning over of any inventions when made or otherwise to interfere with the previously made contract obligations. Mr. Dick refers to this agreement of May 12, 1911, in his letter of August 6, 1913. Mr. Fuller acted upon Mr. Dick's inducements and in consideration thereof aroused and utilized his energy with apparent success. Thus there was an agreement which is not to be regarded as a mere executory promise without a consideration, but as one founded upon valid consideration and which is capable of enforcement. The services rendered by defendant in the Belknap interference were outside of this immediate matter. For what defendant did in that he was paid in full.

There is no reason why under the pleadings as amended defendant cannot recover herein for the value of his services rendered in working for the benefit of the plaintiff, provided he has succeeded in his invention and makes disclosure. Under the evidence, defendant gave part of his time toward perfecting stencil plate improvements from about September 1, 1911, until January 20, 1912. A reasonable compensation for his time is at the rate of $200 a month for the period specified, or $933. Thereafter he resumed experimental work on February 9, 1912, and except for "a few months" for vacation during hot weather he continued his work until the 25th of July, 1913, when he announced to the Dick Company that he had made an invention of a dry process stencil sheet. Deducting two months for vacation, we have a period of 15½ months, and at $200 a month his compensa-

tion for this latter period would be $3,100; and for both periods a total of $4,033.

[4, 5] The contention that the bringing of the suit was a repudiation by plaintiff of such an agreement for compensation as I find was made does not seem to me to be sound. The promise of plaintiff became binding when defendant began work in reliance upon it. Miller v. McKenzie, 95 N. Y. 575, 47 Am. Rep. 85. Mr. Dick, as late as August 28, 1913, appears to have been ready and willing to make a substantial payment to the defendant for his "time and expenses spent in working on these inventions," provided, of course, that he found such inventions to be of commercial value and that his company was not further delayed and put to further expense in enforcing its rights under the contract. The telegram of August 5th signed by the Dick Company and Mr. Dick's letter of August 6th also go to show that there had been some arrangement for compensation.

Plaintiff is entitled to a decree. The decree should be so drawn that it will not become absolute until plaintiff shall have paid the money hereinbefore found to be due to the defendant by way of compensation; and plaintiff shall have a right to ascertain whether the inventions are patentable and practical. Plaintiff is requested to draw a decree along these lines.