AMERICAN SHIPBUILDING CO. v. COMMONWEALTH S. S. CO.

(Circuit Court of Appeals, Sixth Circuit. June 2, 1914.)

Nos. 2484, 2485.

CORPORATIONS (§ 589*)—CONSOLIDATION—MERGER—CONTRACTS.

Separate corporations, each of which owned and operated a steamship on the Great Lakes, and some of which had common stockholders, owing to a falling off in business, and to cut off the expense incident to the unnecessary and unprofitable operation of all the vessels, decided to place the ownership of all in one corporation, and to that end one increased its capital stock and exchanged such additional stock for that of the others, which thereupon transferred to it all of their property, including all choses in action, claims and demands, and were then dissolved. *Held*, that such transaction was in effect a merger or successorship in interest, and not a transfer of property from one owner to another, and that on a subsequent discovery that the contracts by which the several corporations acquired their vessels were voidable for fraud of the seller, which was the same in each case, the succeeding corporation could exercise their right of election to rescind such contracts and maintain suits to enforce such rescission.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 2354–2360; Dec. Dig. § 589.*]

Appeal from the District Court of the United States for the Eastern Division of the Northern District of Ohio; Wm. L. Day, Judge.

Two suits in equity by the Commonwealth Steamship Company against the American Shipbuilding Company. Decrees for complainant (197 Fed. 797) and defendant appeals. Modified and affirmed.

These are companion cases to American Shipbuilding Company v. Commonwealth Steamship Company, 215 Fed. 296, —— C. C. A. ——, No. 2483, an opinion in which is this day filed. The controlling facts are so closely analogous to the facts in that case as not to require further statement, except in one particular.

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The steamship Sheldon Parks was built for and delivered to the Cuyahoga Steamship Company, for the price of $410,000, out of which the Hawgoods received a secret commission of $25,000, and the steamer J. Q. Riddle was furnished to the Milwaukee Steamship Company for the same price and with the same secret commission. Each of these corporations was a company organized for the purpose of buying and operating the boat which it did acquire, and the steamboats Abraham Stearns, Sheldon Parks, and J. Q. Riddle were separately operated till 1911. There were four other boats similarly promoted and built and sold, the entire seven within two or three seasons. The seven distinct corporations had many common stockholders, but there was nothing approaching identity of stock interests, and the chief thing in common was that all were operated and managed by the same agents.

Before 1911, it developed that in the business conditions which had then arisen there was not traffic enough for all the boats, and that it would be better policy to keep part of the boats fully occupied and the remainder tied up, whereby the total overhead expenses would be vastly lessened; but the lack of common ownership made this plan not feasible. In addition, it was difficult for the common agents to distribute the business among the boats without continual dissatisfaction. With these as the main reasons, it was, in the spring of 1911, determined to put all seven boats into the ownership of one corporation. Accordingly, the capital stock of the Commonwealth Company was sufficiently increased, and all the stockholders in the other six corporations surrendered and canceled their stock therein and received in exchange practically the same amount of stock in the Commonwealth Company. All the stock had been originally issued to represent the purchase price of the boats (above the bond issue) at par, and the same figures were used when the exchange stock was issued in the Commonwealth Company, except that there was a slight change designed to equalize more perfectly. Thereupon, each of the other corporations, including the Cuyahoga Company and the Milwaukee Company, executed and delivered to the Commonwealth Company a formal transfer and conveyance of "all properties of every kind and all choses in action and of all claims and demands of whatever kind and nature whether in law or in equity." The Commonwealth Company assumed all the indebtedness of the assignor companies, and each of the latter, including the Cuyahoga and Milwaukee Companies, was, under the laws of Ohio, formally dissolved and wound up.

A. C. Dustin and Richard Ingles, both of Cleveland, Ohio, for appellant.

A. B. Thompson, C. P. Hine, and C. R. Bissell, all of Cleveland, Ohio, for appellee.

Before WARRINGTON, KNAPPEN, and DENISON, Circuit Judges.

DENISON, Circuit Judge (after stating the facts as above). Upon this state of facts, defendant urges that the sale of their steamers by the Cuyahoga Company and the Milwaukee Company, before these companies had elected to rescind the purchase from the defendant, did not give to their vendee, the Commonwealth Company, any power to exercise such an election. Plaintiff insists that each of its assignor companies had been defrauded, and that the right to pursue any appropriate remedy for this fraud passed to it by assignment; defendant concedes this position as to the right to sue for damages for the fraud, but denies it as to the right of rescission, because no right of action to enforce a rescission arose until the election had been made. It is clear that the difficulties in the way of permitting a rescission to be made by the vendee of a defrauded vendee are considerable, and

where the property had been sold by the original vendee at a reduced price because of the damage resulting from the then undiscovered fraud, and where the second vendee sought to rescind without regard to the rights of the first vendee, these difficulties might be insuperable. We find it unnecessary to follow counsel in their exhaustive arguments and study of precedents involving these questions. The objection to allowing a rescission by a second vendee rests on the affirmance implied from the sale by the first vendee and on the thought that the right of election is a strictly personal right. This objection of course disappears if there has been no transfer from one person to another, but if substantial identity of ownership continues. The facts of the transaction, by which the properties of the Cuyahoga Company and the Milwaukee Company came to the Commonwealth Company and the stockholders of the former exchanged their stock for that of the latter, stamp it as substantially and equitably a matter of merger or successorship in interest, rather than of assignment between strangers. Williams v. American Ass'n (C. C. A. 6) 197 Fed. 500, 118 C. C. A. 1; Bank v. McIntyre, 40 Ohio St. 528; Shadford v. Detroit Ry., 130 Mich. 300, 89 N. W. 960; Church v. Railroad (C. C.) 41 Fed. 564; note, vol. 11, L. R. A. (N. S.) 1125, 1127–1130. The distinction would be, for some purposes, not at all important, but from the standpoint of the court of equity decreeing rescission, it becomes sufficient. The Cuyahoga Company and the Milwaukee Company are out of existence, no person interested can ever be called upon to respond to either of them, and the right to exercise an election and demand a rescission must go to their successor corporation.

We do not see any controlling distinction in the fact that other stockholders than the original ones of the Cuyahoga Company and the Milwaukee Company have become beneficially interested in the recovery. The same thing is equally true in the other case, No. 2483, where the recovery will inure for the benefit of all the new as well as all the old stockholders of the Commonwealth Company, and the same thing is true in regard to any corporation whose stockholders are changing.

The plaintiff, in each of these cases, is entitled to relief for the same reasons and to the same extent discussed in the opinion in No. 2483, and corresponding orders will be entered in these two cases.