## A. B. DICK CO. v. FULLER.

(District Court, S. D. New York. July 24, 1923.)

1. Patents ⬅203—Assignee of patents held entitled to enforce assignor's rights under decree for specific performance of contract to disclose inventions.

Assignment of corporation property, patents, and good will entitled assignee to enforce assignor's rights under decree ordering specific performance of contract to disclose subsequent invention and improvements, and to recover damages for violation of decree, since contract was not personal, and could be assigned.

2. Injunction ⬅204—Order restraining defendant from engaging in manufacture, use, or sale of materials or processes held sufficiently definite.

Order restraining defendant from "engaging or becoming interested during operation of said contract of May 12, 1911, in the manufacture, use, or sale of material or processes of a class or character illustrated by the said several inventions," preceded by words "relating to stencil paper or processes or methods for preparing, producing, or using the same," held sufficiently definite; life of contract being limited to that of original patent.

3. Injunction ⬅219—Defendant cannot excuse disregard of injunction by claiming it should have been limited in time.

If there is any doubt as to time limit of injunction order limited to life of specified contract, defendant should have had definite time inserted therein, and he cannot excuse disregard of order by claiming that it should have been limited in time.

4. Patents ⬅196—Assignment of patent or application, with agreement to transfer inventions relating thereto, held legal.

Assignment of patent or application therefor with agreement to transfer inventions relating thereto during life of original patent is not illegal under Clayton Act, but inventions of things outside of direct subject-matter may not lawfully come within such contract.

5. Patents ⬅202(1)—Correspondence between parties to contract whereby defendant agreed to disclose subsequent inventions held to negative defendant's claim of rescission and laches.

Correspondence between parties held to show that complainant at all times insisted on its right to have prompt disclosure of all inventions relating to stencil paper under its contract with defendant and decree ordering specific performance thereof, and that defendant never offered to disclose except for remuneration, negativing defendant's claim of rescission and laches.

6. Patents ⬅202(1)—Letter held not to bind plaintiff to pay for inventions to which it was entitled under contract.

Letter written to defendant by officer of plaintiff corporation, to which defendant assigned patents under agreement to disclose subsequent inventions, stating that, "if I should become interested in what you may have and wished to acquire it, I should naturally expect to pay for it," did not bind plaintiff to pay for inventions to which it was entitled under contract, but merely involved generous suggestion or proposal, based on no consideration, when plaintiff never had definite information as to invention, and defendant had stated that invention did not come under contract.

7. Patents ⬅202(1) — Defendant could not claim contract was broken or rescinded, because plaintiff refused to accept invention with condition of remuneration.

Defendant, who contracted to disclose subsequent inventions, was bound to disclose unconditionally, and could not claim that contract was broken or rescinded because plaintiff refused to accept disclosure with condition of remuneration.

8. Injunction ⬅230(4)—Order directing assignment of application for patent could not be granted in contempt proceeding for violating decree.

Order directing assignment of defendant's pending application for patent as agreed in contract could not be granted in contempt proceeding for violating decree directing assignment of inventions, which did not direct disclosure of further invention; plaintiff's remedy being by supplemental bill and decree.

9. Injunction ⬅232—Violation of injunction prohibiting manufacture, use, or sale of stencil paper held contempt, punishable by fine to reimburse complainant.

Violation of order enjoining defendant from manufacturing, using or selling stencil paper and processes, etc., was contempt of court, punishable by fine sufficient to make good plaintiff's damages and expenses in enforcing decree, including counsel fee and costs and disbursements.

In Equity. Suit by the A. B. Dick Company against Louis E. Fuller, wherein decree for plaintiff containing an injunction was entered. On proceeding to punish defendant for contempt of court in violating injunction. Motion granted, and defendant fined.

S. O. Edmonds, of New York City, for complainant.

Thomas A. Hill, of New York City, for defendant.

AUGUSTUS N. HAND, District Judge. By a contract dated May 12, 1911, between the defendant and others and A. B. Dick Company, it was agreed by Fuller and his associates that they should disclose "promptly" and "without further consideration" to the A. B. Dick Company any inventions thereafter acquired "in or relating to stencil paper and processes or methods for preparing, producing, and using the same," and if desired should assign any such inventions or applications to the A. B. Dick Company.

A suit was brought by A. B. Dick Company for the specific performance of this contract, and a decree entered, after a trial before Judge Hunt, directing the defendant herein specifically to perform the contract and disclose to A. B. Dick Company in writing, within 30 days, all inventions and improvements in or relating to stencil paper and processes or methods for preparing, producing, and using the same. By said decree an injunction was ordered, and thereafter issued, enjoining said defendant, during the operation of the contract of May 12, 1911, from engaging in the manufacture, use, or sale of material or processes of the class or character illustrated by the said several inventions. A. B. Dick Co. v. Fuller (D. C.) 213 F. 98.

There can be no doubt that the defendant has sold 1,600 stencil sheets of the general type referred to in the foregoing contract to various customers and has received payment therefor. He claims that he has not violated the contract, and that this proceeding will not lie, because: (1) The injunction granted by Judge Hunt is indefinite in meaning and direction; (2) the complainant is a different corporation from the one with which he contracted; (3) because such a contract was in violation of the Clayton Act; (4) the agreement to assign has been rescinded; (5) the complainant has been guilty of laches and is barred from seeking equitable relief.

A motion was made to refer to a master the question whether the defendant has since Judge Hunt's decree violated section 8 of the contract of May 12, 1911, providing for disclosure and assignment of future inventions relating to stencil paper, and whether he has violated the injunction granted by such decree. The matter was referred to William Parkin, Esq., as special master, who reported that the defendant had made an invention relating to stencil paper, had refused to disclose the same without further compensation, and had violated the injunction by selling about 1,600 'sheets of such paper to various parties other than the complainant.

[1] It is not questioned that the A. B. Dick Company, which was the complainant in the suit before Judge Hunt, assigned all its property, patents, and good will to the complainant in this suit, which is a different corporation of the same name and with the same stock interests. Such an assignment entitles this complainant to enforce the rights adjudicated in the former suit and to recover damages for any infringements of the provisions of the former decree. American Shipbuilding Co. v. Commonwealth S. S. Co., 215 F. 304, 131 C. C. A. 604. Moreover, the contract was not personal and might be validly assigned. Quinn v. Whitney, 204 N. Y. 363, 97 N. E. 724.

[2, 3] While the decree of Judge Hunt and the injunction issued in accordance therewith might have been more detailed, the injunction order restraining the defendant from "directly or indirectly engaging or becoming interested, during the operation of said contract of May 12, 1911, in the manufacture, use, or sale of material or processes of the class or character illustrated by the said several inventions, * * *" when preceded earlier in the writ of injunction by the words "relating to stencil paper or processes or methods for preparing, producing, or using the same," would seem to sufficiently inform the defendant as to what he ought to do. I think the complainant's counsel is correct in saying that the life of the contract is limited to that of the original patent granted June 23, 1914. If there is any doubt about this, the defendant should have taken steps to have some definition of the time limit of the operation of Judge Hunt's decree inserted therein. He cannot properly excuse the disregard of an injunction granted in a suit where the court had jurisdiction of the parties and the subject-matter by making the

claim that it should have been limited in time.

[4] I can see no ground for contending that the contract or injunction granted by Judge Hunt is in violation of the Clayton Act (38 Stat. 730). In the first place, the date of the injunction was more than six months prior to the passage of that act. As I have already stated in my opinion, the life of the contract is limited to the life of the original patent, No. 1,101,268, which was granted June 23, 1914. Inventions during the lifetime of that patent, or until June 23, 1931, are assignable and must be disclosed. My attention is called to no case holding an assignment of a patent or application therefor accompanied by an agreement to transfer inventions relating to the same subject-matter made during the lifetime of the original patent has been held illegal. Inventions in ink or other things outside of the direct subject-matter of the patent may not lawfully come within the contract.

[5] The principal attack upon complainant's position has been made upon the theory that the right to an assignment of the invention in stencil sheets has been terminated by a recission of the agreement or barred by laches. I have examined the correspondence upon which this contention is based. The alleged information in February, 1915, that the defendant had invented stencil paper was negatived by defendant's letter of February 18, 1915, where he says he does not think the invention comes within the terms of the contract, and that it is of "a stencil sheet and not * * * stencil paper."

After a cessation of the correspondence for over a year, defendant again, on May 3, 1916, wrote the Dick Company, complaining of the fact that it had taken no action in regard to his communications, beyond "making request that I disclose the invention to you in accordance with the terms of an alleged contract with you," and concluded with the statement: "If I do not hear from you immediately, I shall take such action as the exigencies of the case seem to me to determine, and I shall assume that you do not intend to take any action." This letter was not answered by the Dick Company, and on May 10, defendant wrote them again, saying: "I will say that I will construe your silence as meaning that you do not intend to do anything about my inventions."

To this letter Dick Company replied, on May 12, 1916, stating: "Our position is, as we believe you fully understand, that we are entitled under the terms of our contract with you, as above mentioned, to a disclosure of your invention, as well, at our election, as your co-operation in the application for letters patent thereon. Manifestly, until you disclose, it will be impossible for us to determine what further steps we wish to take with regard to the invention in question."

On June 8, 1916, the defendant wrote the Dick Company, stating that the contract between the parties of May 12, 1911, was a part of a conspiracy to monopolize and control the stencil paper and duplicating machine business, and that in his belief the contract was illegal. He added: "As I have already told you, I have made an invention of a dry process stencil sheet and have also made other inventions which it is likely relate to stencil paper. I offer to disclose these inventions to your company and to sign any papers that in your judgment are necessary to vest these inventions in your company. I do this not because I am willing or anxious to assist you in your illegal schemes or willing to assign my inventions to you, but because it is my desire to avoid ruinous litigation if possible. You and others in your behalf, orally and in writing, made a general agreement to compensate me for anything I might do in your behalf and to 'assist you in the endeavor to launch your enterprise.' Naturally, after the disclosure is made, I will expect you to make good on that promise."

To this letter Dick Company stated in its reply, on June 15, 1916: "If your letter is to be construed as notifying us that you have made one or more inventions in stencil sheets which you offer to disclose to us in accordance with the provisions of the contract of May 12, 1911, we shall be glad to receive such disclosure by mail."

There was no more correspondence until September 23, 1916, when defendant wrote the Dick Company that they had not accepted his offer to disclose, and stated that he, because of nonacceptance, rescinded the contract, and that "the offer on my part to disclose is therefore hereby withdrawn."

The Dick Company, on September 29, 1916, wrote the defendant that they did not "acquiesce in your attempted 'rescission' of the contract or in the withdrawal of your so-called 'offer to disclose.' On the contrary, we demand strict compliance by you with the provisions of the contract of May 12,

1911, and, in particular, a disclosure of the inventions in question as required in section 8 of that contract."

The defendant replied to the foregoing letter by letter of December 9, 1916, reaffirming his so-called "rescission of the contract of May 12, 1911, if there is any such contract."ⁱ By letter bearing the same date, December 9, 1916, the defendant also wrote the Dick Company, accusing it of bringing a malicious and unrighteous action against him, wresting his property from him, and scheming to ruin and disgrace him, and stated that it was defendant's intention to bring the Dick Company to account.

The defendant seems to have written no more letters to the Dick Company until August 10, 1920, when he wrote the letter asking if it was willing to do justice to him in regard to "the acquisition of the Dermatype stencil sheet invention * * * patented by me and manufactured by you, and from which you have profited largely."

It is clear that up to this time the defendant had made no disclosure to the A. B. Dick Company, and had offered to make none, except in return for a compensation which he had no right to require, nor had he clearly stated that he had made any invention which came under the terms of the contract, but, on the other hand, had stated in his letter of February 18, 1915, that he did not think his invention came within the same, and had likewise repudiated the contract itself.

On June 17, 1922, the defendant began a further correspondence with complainant, asking it whether it was "amenable to some plan by which we could adjust our differences in regard to stencil paper, etc., and which would bring to you the benefit of my work and to me a corresponding advantage."

On July 5, in reply to this letter, Mr. A. B. Dick wrote: "I learn from your letter that you have already or are about to have some interesting improvements in stencil paper. From your letter I am unable to determine whether or not you already have the improvement made or not. In any event, if in your opinion the improvement would serve us in our manufacture, I shall be glad to have you set forth more definitely your invention, with your plan of disposition to us, so that I may give it my early consideration."

To this the defendant replied, on June 7, that it would be useless for him to go into any details unless he first knew "whether you are amenable to some plan which would bring you the benefit of my work and me a corresponding advantage, * * * whether you are willing to take over the use of any patents on a lump sum and royalty basis, or a lump sum alone."

To this Mr. Dick replied, on July 10, asking the defendant whether he had invented a new composition stencil sheet which might be typed and written upon with a stylus, and which would yield copy prints in quality and quantity equal to Dermatype; whether he had applied for a patent, or, if not, whether it was patentable, etc.

On July 13 the defendant replied to the Dick Company, stating that he wanted to know, first, whether the Dick Company wished to get the benefit of his work and were willing that he should receive a corresponding advantage; and, second, whether they were willing to take over the use of any patents which he might have on the basis of remuneration to him.

On July 17 Mr. Dick replied to the defendant, asking whether he suggested a new agreement, which would wipe out the present one, or whether he wished to modify that, and, if so, in what respect, and stated that they were "constantly on the lookout for improvements on our machines, our stencil paper, our ink, and other accessories. It has always been our policy to treat any offer in this line on its merits and in a liberal spirit, but we cannot deal in generalities, particularly where there is danger of misunderstanding."

On July 19, the defendant wrote to Mr. Dick, that he did not ask him to name a figure for something he knew nothing about and had not seen, but wished him to state whether he was willing that he should receive remuneration, provided his patents or inventions were of value and were accepted.

Mr. Dick replied on July 26, 1922, saying: "You may have a machine or an improvement in the duplicating art which would revolutionize the industry, in which case I would be deeply interested. On the contrary you may have some minor improvement only which would not interest me at all. If I should become interested in what you may have and wished to acquire it, I should naturally expect to pay for it. In either case I should have to use my judgment and I could only do that when I had before me a full description of the thing itself and such information concerning it as I deem pertinent." Mr. Dick again insist-

ed upon information before he suggested any arrangement.

The next letter of any importance is from the defendant to the Dick Company, dated July 31, 1922, containing an outline of a proposed agreement between the Dick Company and himself in regard to "any patent that might issue to me," and which the Dick Company should desire to acquire. The letter contains this sentence: "The foregoing is of course a mere synopsis of what I propose, but it expresses my thought. It is clear that I am proceeding on the theory that from the beginning there should have been royalty payments provided for myself."

The foregoing proposal of July 31 appears to have met with no approval from the Dick Company, who wrote, on August 13, 1922. "As there was a complete and entire lack of seriousness in your previous letter of July 31st, I did not reply to it, nor shall I do so now."

On August 16 and 24, 1922, the defendant again wrote complainant; in the first letter reiterating its proposal to enter into a contract involving payments to defendant. Mr. Dick wrote him on August 30: "If you have an invention to submit under our present agreement, I will give it my careful and unprejudiced consideration, but I can see no necessity of such a contract as last proposed."

On September 2, 1922, the defendant replied to the last letter suggesting an exchange of releases and a renewal of negotiations for some working agreement. On September 29, 1922, Mr. Dick, in reply to a telegram from defendant, said: "Refer to my letter of August 30th further compensation, if any would depend on my appreciation of your inventions. There is no alternative."

There was a certain amount of further correspondence, which has no legal significance, prior to December 6, 1922, when Mr. Dick wrote Mr. Fuller, in New York: "If you still desire to show me your new stencil sheet, I shall be in position to make arrangements for Thursday afternoon or Friday morning."

To this the defendant replied on December 7, stating that Dick had already terminated the discussion, and, if he wished to reopen it, would he not say so. Fuller wrote Dick on December 18, apparently complaining of Dick's failure to call to see him, and stating: "If we are to deal honestly and sincerely, and each be reason-

ably sure of the good faith of the other, a sum of earnest money and an agreement setting forth our intentions are essential."

On December 26 the defendant wrote Mr. Dick, saying: "I have said nothing about stencil paper or demonstrations, and this now is the first time that you have referred to these. * * * If you are interested in an important invention appertaining to 'the art of duplication,' why do you not, and why have you not met my suggestions reasonably?"

On December 28 Dick again wrote Fuller, " * * * I have consistently maintained that I shall view your inventions in the stencil duplicating business as coming fully under the contract we have with you, regardless of any further considerations which might apply, if I felt so inclined."

[6] On December 30, 1922, the defendant wrote Dick, expressing astonishment at the latter's attitude, and reminding him that in a letter of July 26, 1922, to defendant, he had stated that he "would be deeply interested in an invention that might revolutionize the art of duplication, and that such as you accepted you would pay for, but that you would not be interested in minor improvements. That left no doubt in your case and none in my case."

This last statement is based upon the clause in Mr. Dick's letter of July 26: "If I should become interested in what you may have and wished to acquire it, I should naturally expect to pay for it." This letter, written by a man who was not a lawyer, certainly cannot be regarded as binding him to pay for something which he is already entitled to get under a contract. It either involves a generous suggestion, or a proposal based on no consideration whatever, but it is to be remembered that the Dick Company never had a definite knowledge of what the defendant had invented. The latter had said in his lettr of Fbruary 18, 1915, that his invention of a "stencil sheet" did not come within the terms of the contract of May 12, 1911, and in fact took that position at the trial here.

On March 20, 1923, the defendant wrote the Dick Company, offering to deliver an assignment of his pending application of duplicator transmitting apparatus named the Cosmotype, together with working formulæ, stating that he conceded nothing and waived "no right, past, present, or future." He also said that in letters of July, 1922, Mr. Dick stated "that anything you accepted you would pay for." "I now call upon

you to accept and to pay the reasonable value of this invention."

To this letter Mr. Edmonds replied, on March 21, 1923, stating that the defendant was under obligation to disclose and turn over his inventions, saying: " * * * I should expect that, if any stencil sheet inventions so turned over by you proved to be broadly patentable and commercially valuable (or promising), Mr. Dick, although under no obligation so to do, would show in a substantial way his appreciation of your interest in the effort to keep his company at the front in its line. This would not, of course, involve payment for inventions, but would, I fancy, be referred to a 'good will' account. What, if anything, he would see fit to do in this line, would be 'up to him,' and therefore not the subject of negotiation."

I believe the foregoing states the substance of the letters, so far as they have any real bearing upon the issues. It is entirely clear to me that the complainant throughout the period succeeding Judge Hunt's decree, has insisted upon its right to have a prompt disclosure of all inventions relating to stencil paper or processes or methods for preparing, producing, and using the same. The defendant never disclosed, or offered to disclose, until forced to disclosure by Judge Mack's order, the invention involved upon this hearing, except as he had offered to make a disclosure if remunerated. Moreover it is quite certain that the A. B. Dick Company never definitely knew whether his invention came within the contract of May 12, 1911. They appear to have been given the opposite information by letter of February 18, 1915.

On June 8, 1916, Fuller wrote: "I have made an invention of a dry process stencil sheet, and have also made other inventions which it is likely relate to stencil paper." This is neither a disclosure nor a clear affirmation of the subject-matter of the invention, particularly when he had said in February, 1915, as to a stencil sheet invention, that he did not think it came within the contract. In his letter of December 26, 1922, he seemed to confirm his former position by saying: "I have said nothing about stencil paper." He testified before the master that he had made no inventions "in stencil paper, or processes or methods of preparing or using the same," except the Cosmotype stencil paper in question.

[7] Furthermore the A. B. Dick Company never asked the defendant to perform any services for them, nor asked him to make any inventions and expend any time or labor for their benefit. There is no such basis for compensation as was shown in the trial before Judge Hunt. 213 F. 98. The defendant was bound to disclose unconditionally, and cannot claim that the contract was broken or rescinded because the A. B. Dick Company refused to accept a disclosure coupled with a condition of remuneration. The only suggestion of compensation made by the Dick Company was in the letter of July 26, 1922, in the course of a correspondence aimed by defendant at a general compromise which was never effected. There has been no rescission of the contract, and no laches on the part of the A. B. Dick Company.

[8] Complainant asks for an order directing an assignment of the pending application of the defendant for a patent on stencil plates. I am of the opinion that this cannot be granted in this proceeding to punish for contempt. Judge Hunt's decree held the contract of May 12, 1911, valid, but only directed the assignment of certain inventions relating to stencil paper upon the terms set forth in the decree. It did not direct the disclosure or assignment of future improvements or inventions of the same class, though under the contract the defendant was bound to disclose and, if required, to assign them; nor did the prayer of the bill ask for any such relief.

While the manufacture and sale of the stencil paper described before the master and stated to be covered by defendant's application for a patent filed in November, 1922, violate the injunction issued under Judge Hunt's decree, the complainant can, in my opinion, only enforce an assignment of the pending application and future inventions of the same class by filing an original or supplemental bill and securing a decree therefor.

[9] As the defendant has very deliberately violated the injunction, he should be adjudged in contempt, and ordered to pay within 30 days to the complainant, as a fine, a sufficient sum to make good its damages arising out of the unlawful sales of stencil paper, as well as its expenses "in enforcing the disregarded order of the court." Board of Trade v. Tucker (D. C.) 221 F. 300; In re Kahn, 204 F. 581, 123 C. C. A. 107; Gompers v. Buck's Stove Co., 221 U. S. 418, 31 S. Ct. 492, 55 L. Ed. 797, 34 L. R. A. (N. S.) 874. The foregoing cases indicate the proper practice, and also dis-

cuss the theory in proceedings like the present for a civil contempt. A counsel fee of $500, and the sum of $25, as estimated damages caused by the sale by defendant of 1,600 sheets of stencil paper, will be the amount of the fine. The complainant is entitled to tax its costs and taxable disbursements in this proceeding. The fees and disbursements of the master are fixed at $254.08. If there is any criticism of the sum of $25, estimated damages for the infringing sales, it may be submitted in writing upon the settlement of the order. It seems more sensible to estimate this damage than to have the expense of a further reference.

Settle order on notice.