31 C.C.P.A.(Patents)

**ABRAHAM & STRAUS, Inc., v. TRUVAL MANUFACTURERS, Inc.**

**Patent Appeal No. 4756.**

Court of Customs and Patent Appeals.
July 15, 1943.

Rehearing Denied Oct. 4, 1943.

A. W. Murray, of Chicago, Ill., for appellant.

Roberts B. Larson, of Washington, D. C., for appellee.

Before GARRETT, Presiding Judge, and BLAND, HATFIELD, LENROOT, and JACKSON, Associate Judges.

GARRETT, Presiding Judge.

This is an appeal from the decision of the Commissioner of Patents, speaking through an assistant commissioner, sustaining the opposition of appellee to the application of appellant for the registration of the notation "Tru-Tex" as a trademark for certain clothing for men; namely, outer and under shirts, pajamas, athletic shirts, and shorts, hosiery, handkerchiefs, sweaters, lounging robes, leather jackets, gloves made of leather, fabric and/or combinations thereof, scarfs, hats, and underwear.

The decision of the commissioner reversed that of the Examiner of Interferences.

The application alleges continuous use of the mark in appellant's business since September 18, 1922, and states that it is the owner of trade-mark registration No. 175,945 (for men's silk, cotton, and woolen underwear in union suits, and two piece garments of knitted and textile fabrics), dated November 13, 1923, the application therefor having been filed December 2, 1922. Reference to that registration was made in appellant's answer, and the commissioner awarded appellant the date of December 2, 1922, for the beginning of use

of the mark "Tru-Tex" on men's underwear.

In its notice of opposition appellee pleaded ownership and use by itself and predecessors of the notation "TruVal" as a trade-mark for men's outer shirts during a period beginning long prior to the date awarded appellant for beginning the use of the mark "Tru-Tex," and pleaded a registration of "TruVal," No. 96,306, granted to M. Koblenzer & Son April 14, 1914, upon application filed October 30, 1912.

In his decision the commissioner stated:

"The case presented by opposer is as follows: Opposer was incorporated in 1937 as a subsidiary of S. Liebovitz & Sons, Inc. which was founded in 1877. This parent company manufactured and sold shirts, and began to sell shirts under the mark 'TruVal' in 1931. This mark had previously been used for men's outer shirts by the firm of M. Koblenzer & Son, which had a registration No. 96,306 of that mark on those goods, issued to it April 14, 1914. The Koblenzer firm was composed of M. Koblenzer and his son S. J. Koblenzer as partners. M. Koblenzer died in 1921 but the son continued the business of the firm and continued to sell shirts under various trade-marks, including the marks 'TruVal', 'Monogram' and 'John Adams'. Then in 1931 he executed an instrument of assignment of the mark 'TruVal' for shirts, the registration thereof, No. 96,306 and the good will of the business in connection with which the mark was used to S. Liebovitz & Sons, Inc., and turned over to the corporation all labels and box covers relating to the mark, and thereafter used the mark no more in his business. In 1937 TruVal Manufacturers, Inc., as subsidiary of S. Liebovitz & Sons, Inc., took over from the latter the business and good will of the business of selling shirts under the mark 'TruVal' and on March 15, 1940, S. Liebovitz & Sons, Inc., gave TruVal Manufacturers, Inc. a formal written assignment of the trade-mark together with the good will of the business in connection with which the trade-mark was used. On March 19, 1940 TruVal Manufacturers, Inc. secured registration No. 376,349 of the mark 'TruVal' for pajamas and sportswear for men on application filed November 4, 1939, and in this application the applicant thereof—who is the present opposer—is stated to be owner of registration No. 96,306 of April 14, 1914. Meanwhile registration No. 96,-306 had been renewed to S. Liebovitz & Sons, Inc. April 14, 1934."

The Examiner of Interferences rendered two decisions in the case, his second being rendered upon petition for reconsideration. He did not pass upon the question of likelihood of confusion in either decision. This fact was pointed out by the commissioner who said: "* * * as I interpret his decisions, of which there were two, he expressed the opinion that no business or any good will of any business of the Koblenzer firm with which the mark of registration No. 96,306 was associated passed from the firm to the corporation, and therefore the purported assignment in 1931 of registration No. 96,306 from the Koblenzer firm to the *Liebowitz* corporation was invalid and the corporation secured none of the Koblenzer firm's rights in and to the trade-mark or registration and in consequence held that because applicant's registration No. 175,945 established use by applicant of its mark 'Tru-Tex' on shirts from December 1922, and prior to 1931, the date when S. Liebovitz & Sons, Inc. itself first used the mark 'TruVal;' the opposition must be dismissed, notwithstanding the renewal by that company of registration No. 96,306 of 'TruVal' and the registration No. 376,349 of the Truval Manufacturers, Inc. of the same mark."

We think it proper to add to the above that in his first decision the Examiner of Interferences said:

"If confusion in trade would be likely, then it is believed that a ruling to this effect can be properly made, if at all, only in the proceeding specified by Section 13, since it does not seem clear to the examiner that it would not be a collateral attack on Registration No. 175,945. No ruling on the question of likelihood of confusion in trade is therefore made in this proceeding.

"Accordingly, the notice of opposition is hereby dismissed, without prejudice, however, to the right of the opposer to request suspension of this proceeding provided the one designated by Section 13 is duly instituted."

Section 13 is the section which provides for cancellation of registered trademarks, and, obviously, it was the view of the Examiner of Interferences that Truval Manufacturers, Inc. (appellee here) should seek relief under that section, and offered it the opportunity to do so.

The opportunity so offered was not accepted by appellee, for reasons set forth

in its petition for reconsideration, and the Examiner of Interferences in his second decision made final the dismissal of the notice of opposition, which decision the commissioner reversed.

Appellant's reasons of appeal raise several issues which are argued in its brief.

Logically, the first question to be passed upon is whether the notations "Tru-Tex" and "TruVal," applied as trade-marks to merchandise of the same descriptive properties (for the purposes of this case we may limit it to identical merchandise—men's outer shirts), would be "likely to cause confusion or mistake in the mind of the public or to deceive purchasers."

If the query thus suggested be answered in the negative, the case would be ended so far as this court is concerned, and appellant would be entitled to the registration sought.

If answered in the affirmative, such other questions as are properly raised by appellant must be considered.

We are of opinion that the query must be answered in the affirmative.

Both marks are suggestive in character. We assume that "TruVal" is intended to suggest to the purchaser that he is obtaining true value and that "Tru-Tex" is intended to convey the idea that the materials composing the article are good materials. While in a narrow sense there may be some difference in their meaning, in a broad sense their significance is quite similar. Both marks have the common prefix "Tru" which conveys an identical meaning in each instance, and both contain six letters arranged in much the same manner so that they are similar in appearance. The situation is quite analogous to that which existed in the case of Marshall Field & Co. v. R. H. Macy & Co., Inc., 115 F.2d 921, 28 C.C.P.A., Patents, 807, where we held "Crepeglo" and "Crepetex," applied to women's hosiery to be confusingly similar.

In connection with the discussion of other questions raised we deem it proper to elaborate somewhat upon the statement of facts as given in that part of the commissioner's decision above quoted.

M. Koblenzer & Son, to whom·registration of the "TruVal" mark (No. 96,306) was granted April 14, 1914, was a firm (not incorporated) composed of Morris Koblenzer (the father) and Sidney J. Koblenzer (the son). The firm was engaged in

selling shirts. It did not manufacture the shirts which it sold, but contracted with manufacturers to make them, and itself applied the labels (or marks) to them.

Morris Koblenzer, the father, died in 1921. Sidney J. Koblenzer, the son, the surviving partner, was the sole heir of his father and he continued the business under the firm name. On January 6, 1931, he executed an instrument under the firm name, signing it "By Sidney J. Koblenzer, A Member of the Firm," conveying to S. Liebovitz & Sons, Inc., "all the right, title and interest" in trade-mark registration No. 96,-306, "and the goodwill of the business in which said trade-mark is used." It does not appear from the record that any shirts bearing the mark were conveyed to the purchaser, but it does appear that all "Tru-Val" labels on hand were delivered to the purchaser, and that the assignor, although continuing to sell shirts bearing other labels or marks, did not thereafter sell any bearing the "TruVal" mark.

Upon the basis of the above stated facts appellant raises two questions.

The first, so far as we can determine from the record, was never suggested to, or considered by, the tribunals of the Patent Office, but is presented here for the first time and, peculiarly enough, it is the question upon which the brief places greatest emphasis. That question relates to the legality of the conveyance of the registration (No. 96,306) in the firm name. In substance, it is argued that the death of Morris Koblenzer brought the partnership to an end, and that thereafter no assignment or sale of a trade-mark, registered in the Patent Office, made in the firm name should be held valid in law. We think the contention upon this point is without merit. The registration existed at the time of the father's death and thereafter as a valid registration under the United States Trade-Mark Registration Act. The son was not only the sole surviving partner of the firm which owned the mark, but was the sole heir of his father. So far as anything in this record shows, he had the legal right to carry on the business in the original name of the firm rather than in his individual name if he chose to do so.

The second contention of appellant is, in meaning (although not specifically so stated in its reasons of appeal or in its brief), that the conveyance made, as above recited, amounted in law to nothing more than an effort to convey the trade-mark

registration alone, the reason for the contention being that it is not shown that any of the articles (shirts) upon which the mark was being used were included in the sale. Appellant invokes the familiar rule of law that a trade-mark is not disseverable from the *business* with which it is associated.

This question was evidently presented below, at least to the commissioner in whose decision is it said:

"Koblenzer did not manufacture shirts. The *business* consisted in creating and supplying the demand for shirts bearing the mark 'TruVal'. Upon securing the assignment S. Liebovitz Sons, Inc. began to engage in the *business* of creating and supplying the demand for shirts bearing the same mark 'TruVal'. The *business* of the Koblenzers had been carried on for many years, and certainly some good will must have become attached thereto. It seems to me that when S. Liebovitz took over from Koblenzer the *business* of selling shirts under the mark 'TruVal' the good will of that *business* did not separate therefrom but remained connected therewith. In order to transfer this *business* and good will I do not think it was required of Koblenzer to cease also the business of creating and supplying the demand for shirts bearing the marks 'Monogram' and 'John Adams'. Accordingly I consider the assignment valid and TruVal Manufacturers, Inc. entitled to claim use of the mark by itself and its predecessors from October 30, 1912." (Italics ours.)

There was nothing unusual about the course of business pursued by Koblenzer and, as we view the matter, he did sell a business right with which a good will was connected to S. Liebovitz & Sons, Inc., along with the assignment of the mark used in that business, and we agree with the commissioner that the assignment was valid. Gehl v. Hebe Co., 7 Cir., 276 F. 271.

Another contention made in the brief of appellant before us is that the assignment by S. Liebovitz & Sons, Inc., to appellee was null and void, it being claimed that "it was merely a naked transfer of said Certificate No. 96,306 for the purpose of filing the Notice of opposition in the name of appellee," and that no business or good will was, in fact, conveyed.

So far as we can determine from the record, that question is raised for the first time before us, and is raised only in appellant's brief. It was not referred to in the decisions below, and it is not mentioned in appellant's reasons of appeal.

Under such circumstances we are not required to consider it, but inasmuch as appellee has accepted it as an issue and discussed it in its brief, we will say that, in our opinion, the contention is without merit. The record discloses that appellee is a subsidiary of S. Liebovitz & Sons, Inc.; that it was organized to act as a selling agent and that the assignment covered the business, good will, etc., which S. Liebovitz & Sons, Inc., received by the assignment from Koblenzer.

After the record in this case had been received in the office of the clerk, and prior to its being printed, appellee suggested diminution of the record and applied for writ of certiorari to have certified for inclusion in the record the petition for reconsideration presented to the Examiner of Interferences following his first decision above recited. The application for writ was granted, subject to cost taxation, and the matter was certified and included in the printed record. We find that the matter was wholly unnecessary in the consideration of the issues before us. So, appellee is assessed with the costs.

For the reasons stated, the decision of the commissioner is affirmed.

Affirmed.

LENROOT, Associate Judge, took no part in the consideration or decision of this case.