Petition of SWEDISH PRODUCE CO.

In re BERG.

C. A. CARLSON CO. v. HERRMANN et al.

No. 48 C 1766.

United States District Court
N. D. Illinois, Eastern Division.

Feb. 15, 1949.

Thiess, Olson & Mecklenburger, Arthur A. Olson, Thorley von Holst, Chicago, Ill., for plaintiff.

Cyril A. Soans, William E. Anderson, Marshal Wiedel, Chicago, Ill., for defendants.

SULLIVAN, District Judge.

On December 10, 1948, Petitioner filed its verified petition, with the affidavit of Timothy P. Sheehan, its president, attached, praying this court to issue a Rule on Victor E. Berg to show cause why he should not be punished for contempt of court. The petition alleges that Victor E. Berg has violated a permanent injunction served on him on November 30, 1931, pursuant to an amended final decree entered on November 12, 1931, in the cause of C. A. Carlson Company v. Robert Herrmann, sometimes doing business as Pleasant Creek Cheese Factory, and Victor E. Berg, Equity Case No. 80, in the United States District Court for the Western District of Wisconsin, finding (a) that the trade-mark "Bond-Ost" for cheese is valid and legally registered as such under the Trade-Mark Act of 1905, 33 Stat. 724, and that said trade-mark was the exclusive property of C. A. Carlson Company, plaintiff herein, in connection with the business in which it is used; (b) That through long use of said word "Bond-Ost" to designate plaintiff's cheese, said word has acquired a secondary meaning identifying the cheese sold as "Bond-Ost" by plaintiff; (c) That plaintiff and its predecessors had since 1904 always manufactured under the trade-mark "Bond-Ost" cheese of a particular size and shape and that defendant, Robert Herrmann, had unfairly competed with plaintiff in manufacturing and selling cheese of the same particular size and shape as plaintiff's cheese manufactured and sold under said trade-mark "Bond-Ost;" (d) That the defendant, Victor E. Berg, controlled and conducted the defense in this suit by his own attorneys and at his own cost and expense, and is bound by any and all decrees entered herein. No appeal was taken from this decree.

Paragraph 7 of the decree provides:

"7. That a perpetual injunction issue out of and under the seal of this Honorable Court, directed to the defendant Victor E. Berg, his agents, servants, employes and attorneys and any and all persons acting by or under his authority or in concert with him, restraining him from manufacturing, selling and/or distributing dairy products, including cheeses under the name or style 'Bond-Ost' or 'Bondost' and from using the words 'Bond-Ost' or 'Bondost' as any part of his publicity or advertising, or as a label for cheese or for the boxes, containers, cartons or wrappings therefor and from manufacturing, selling and/or distributing cheese of a size and shape simulating the size and shape of plaintiff's cheese manufactured and sold by it under the said trade-mark 'Bond-Ost'."

Petitioner here contends that for sixteen years Berg obeyed the terms of the decree, but that within the last year he has violated the injunction, first, by the use of the words "Bord-Ost" and "Berg-Ost" as trade names for cheese distributed by him, and secondly, by manufacturing and selling, or causing to be manufactured and sold cheese of substantially the same size and shape as petitioner's "Bond-Ost" which is the same size and shape as was that sold by C. A. Carlson Company in 1931, when the injunc-

tion was issued against Berg; that respondent's present labels, in addition to the use of the term "Berg-Ost" are confusingly similar to petitioner's labels in color scheme, being predominantly blue and yellow and circular, with the identifying mark appearing straight across. That from the affidavit of Lillian Karman it appears that in a shopping tour in which eight retail stores were visited by her, in six instances the dealer furnished her with whole "Berg-Ost" cheese in response to her request for whole "Bond-Ost" cheese. Petitioner insists that the validity of the trade-mark, "Bond-Ost" was settled by the decree of 1931, and that C. A. Carlson Company was, under that decree, entitled to protection against unfair simulation of the size and shape of "Bond-Ost" cheese which it had been manufacturing under that trade name and in that particular size and shape since 1904, and which, as its successor, petitioner is now manufacturing and selling under said trade-mark.

Defendant has filed his answer in the present cause, denying that petitioner is successor in interest to C. A. Carlson Company, and urges that the right to enforce the decree of 1931 was a right in personam and not a right in rem, and therefore was not capable of assignment by Carlson to Shefford Cheese Co., Inc., to Standard Brands, Incorporated, and finally to petitioner, and that said right was never actually so assigned.

It appears, therefore, that the only new issue in the present proceeding is whether petitioner is in law the successor to the rights of the C. A. Carlson Company in the decree entered in 1931 by the United States District Court for the Western District of Wisconsin in the case of C. A. Carlson Company, a corporation, v. Robert Herrmann, sometimes doing business as Pleasant Creek Cheese Factory, and Victor E. Berg; and whether Berg's present trade name of "Berg-Ost" is so confusingly similar to the trade name "Bond-Ost" as to constitute a contempt of court. The affidavit of Fred Berg, salesman for petitioner for the past twenty-one years, sets out that the "Bond-Ost" cheese marketed today by petitioner is identical in shape and size

with that marketed in 1931 by petitioner's predecessor, the C. A. Carlson Company. Petitioner urges that Victor E. Berg is in contempt of court because he has not obeyed the injunction issued by the United States District Court for the Western District of Wisconsin in 1931, from which injunction and decree no appeal was ever taken, and may not now be attacked collaterally. In support of this position petitioner cites the case of United States v. United Mine Workers of America, 330 U.S. 258, 67 S.Ct. 677, 696, 91 L.Ed. 884, where the Supreme Court said:

"Proceeding further, we find impressive authority for the proposition that an order issued by a court with jurisdiction over the subject matter and person must be obeyed by the parties until it is reversed by orderly and proper proceedings. This is true without regard even for the constitutionality of the Act under which the order is issued. In Howat v. Kansas, 1922, 258 U.S. 181, 189, 190, 42 S.Ct. 277, 280, 281, 66 L.Ed. 550, this Court said:

"'An injunction duly issuing out of a court of general jurisdiction with equity powers, upon pleadings properly invoking its action, and served upon persons made parties therein and within the jurisdiction, must be obeyed by them, however erroneous the action of the court may be, even if the error be in the assumption of the validity of a seeming, but void law going to the merits of the case. It is for the court of first instance to determine the question of the validity of the law, and until its decision is reversed for error by orderly review, either by itself or by a higher court, its orders based on its decision are to be respected, and disobedience of them is contempt of its lawful authority, to be punished.' * * *"

In support of its contention that petitioner has no standing in these proceedings in this court, in spite of the fact that it is the assignee of the trade-mark "Bond-Ost" and of the good will of the business in connection with which the mark is used, respondent cites to the court the case of Popsicle Corporation v. Pearlstein, et al., 168 S.W.2d 105, decided by the St. Louis Court of Appeals of Missouri. This case I be-

lieve is distinguishable on its facts from the case at bar. In the Popsicle case the original plaintiff brought suit against its onetime licensee. The license contract had provided among other things that the licensee would respect the licensor's patents covering a sucker on a stick, that the licensee would not make or sell suckers of a size greater than three ounces or at a price to the trade less than forty cents a dozen, and that the licensee would purchase all its extracts and ingredients used in the manufacture of the suckers from the Popsicle Corporation. Pearlstein the licensee disregarded the license and purchased her ingredients elsewhere, whereupon Popsicle sued her and obtained a decree whereby she was enjoined from manufacturing suckers of a size larger than three ounces, from selling them at a price less than forty cents a dozen and from using in their manufacture any ingredients other than those purchased from the Popsicle Corporation. Subsequently the Joe Lowe Corporation took over the business of the Popsicle Corporation, at which time the Popsicle Corporation purportedly assigned to the Lowe Corporation its right, title and interest in the decree, but the court held that the decree there was one in personam not binding anyone except respondents, and not conferring a right upon anyone except the Popsicle Company.

Here in the assignment from the C. A. Carlson Company to the Shefford Cheese Company, Incorporated, and the assignment from the Shefford Cheese Company, Incorporated, to Standard Brands, Incorporated, the grantor in each instance conveyed its "entire right, title and interest in and to the said trade-mark," together with "the good will of the business in connection with which said mark is used." In the third assignment the grantor, Standard Brands, Incorporated, conveyed to Swedish Produce Company, the petitioner here, "the entire right, title and interest in said trademark, * * * and the good will of the business in connection with which said mark is used."

In the case of Abraham & Straus, Inc. v. Truval Manufacturers, Inc., 138 F.2d 77, 79, 31 C.C.P.A., Patents, 731, the Court of Customs and Patent Appeals said:

"The second contention of appellant is, in meaning (although not specifically so stated in its reasons of appeal or in its brief), that the conveyance made, as above recited, amounted in law to nothing more than an effort to convey the trade-mark registration alone, the reason for the contention being that it is not shown that any of the articles (shirts) upon which the mark was being used were included in the sale. Appellant invokes the familiar rule of law that a trade-mark is not disseverable from the business with which it is associated.

"This question was evidently presented below, at least to the commissioner in whose decision it is said:

" 'Koblenzer did not manufacture shirts. The business consisted in creating and supplying the demand for shirts bearing the mark "TruVal". Upon securing the assignment S. Liebovitz Sons, Inc. began to engage in the business of creating and supplying the demand for shirts bearing the same mark "TruVal". The business of the Koblenzers had been carried on for many years, and certainly some good will must have become attached thereto. It seems to me that when S. Liebovitz took over from Koblenzer the business of selling shirts under the mark "TruVal" the good will of that business did not separate therefrom but remained connected therewith. In order to transfer this business and good will I do not think it was required of Koblenzer to cease also the business of creating and supplying the demand for shirts bearing the marks "Monogram" and "John Adams". Accordingly I consider the assignment valid and TruVal Manufacturers, Inc. entitled to claim use of the mark by itself and its predecessors from October 30, 1912.'

"There was nothing unusual about the course of business pursued by Koblenzer and, as we view the matter, he did sell a business right with which a good will was connected to S. Liebovitz & Sons, Inc., along with the assignment of the mark used in that business, and we agree with the

commissioner that the assignment was valid. Gehl v. Hebe Co., 7 Cir., 276 F. 271."

■ In Sheehan's second affidavit it appears that the cheese business here in question is one where in most instances the seller to the retail trade does not himself manufacture the cheese, but causes it to be made for him by agents according to formulae, with hoops and molds furnished by such seller. That in connection with the trade-mark "Bond-Ost" the Swedish Produce Company and its predecessors have, through advertising and diligent effort popularized said "Bond-Ost" trademark and over a period of forty-four years have built up an acceptance and good will with respect to the cheese upon which this trade-mark is used, which is of great value. Even though petitioner's assignors had been actually engaged in the manufacture of cheese rather than only in its distribution the assignments would have been sufficient to vest petitioner with the requisite title, as appears from the decision of the Circuit Court of Appeals for the Seventh Circuit in Gehl v. Hebe Co., 276 F. 271, 273, where Judge Alschuler said:

"The assignment to appellee is attacked on the ground that by it the business of the assignor was not assigned. The assignment states that whereas the Hebe Company is desirous of acquiring the trademark and 'all the business and good will associated therewith,' now therefore in consideration, etc., the Carnation Milk Products Company has sold, assigned, and transferred to the Hebe Company the entire right, title, and interest in and to said trade-mark and certificate of registration, 'together with all the good will of the business connected with said trade-mark Hebe, picture and certificate of registration.' The granting part of the assignment does not specifically mention the business. While this, in view of the recital, is probably an inadvertent omission, there would seem to be much difficulty in transferring of the good will of a business wholly apart from the business itself. The good will would not be transferred if the grantor remained at liberty to carry on and contend for the very business as to which the good will of the former owner had by his conveyance passed to another.

"As to assignment of registered trademarks the statute provides:

"'Every registered trade-mark * * * shall be assignable in connection with the good will of the business in which the mark is used.' 33 St.L. 727, c. 592, § 10 (Comp. St. Sec. 9495).

"While it may be that in contemplation of the statute that it would not be deemed an assignment 'in connection with the good will of the business' which left the assignor free to continue the business as before the assignment, the assignment here is in the form which embodied the statutory provisions, and there is no evidence whatever that since the assignment the assignor continued the business or has asserted any right to do so. We consider the assignment sufficient."

In the case of A. B. Dick Co. v. Fuller, D. C., 6 F.2d 393, 394, Judge Hand said:

"It is not questioned that the A. B. Dick Company, which was the complainant in the suit before Judge Hunt, assigned all its property, patents, and good will to the complainant in this suit, which is a different corporation of the same name and with the same stock interests. Such an assignment entitles this complainant to enforce the rights adjudicated in the former suit and to recover damages for any infringements of the provisions of the former decree. American Shipbuilding Co. v. Commonwealth S. S. Co. [6 Cir.], 215 F. 304, 131 C.C.A. 604. Moreover, the contract was not personal and might be validly assigned. Quinn v. Whitney, 204 N.Y. 363, 97 N.E. 724.

"While the decree of Judge Hunt and the injunction issued in accordance therewith might have been more detailed, the injunction order restraining the defendant from 'directly or indirectly engaging or becoming interested, during the operation of said contract of May 12, 1911, in the manufacture, use, or sale of material or processes of the class or character illustrated by the said several inventions, * * *' when preceded earlier in the writ of injunction by the words 'relating

to stencil paper or processes or methods for preparing, producing, or using the same,' would seem to sufficiently inform the defendant as to what he ought to do. I think the complainant's counsel is correct in saying that the life of the contract is limited to that of the original patent granted June 23, 1914. If there is any doubt about this, the defendant should have taken steps to have some definition of the time limit of the operation of Judge Hunt's decree inserted therein. He cannot properly excuse the disregard of an injunction granted in a suit where the court had jurisdiction of the parties and the subject-matter by making the claim that it should have been limited in time.

\* \* \* \* \* \*

"As the defendant has very deliberately violated the injunction, he should be adjudged in contempt, and ordered to pay within 30 days to the complainant, as a fine, a sufficient sum to make good its damages arising out of the unlawful sales of stencil paper, as well as its expenses 'in enforcing the disregarded order of the court.' Board of Trade v. Tucker, D.C., 221 F. 300; In re Kahn [2 Cir.,] 204 F. 581, 123 C.C.A. 107; Gompers v. Buck's Stove Co., 221 U.S. 418, 31 S.Ct. 492, 55 L.Ed. 797, 34 L.R.A.,N.S., 874. \* \* \*"

Except for the use of "Berg-Ost" instead of "Bond-Ost" it appears that Berg is proceeding today precisely as though no injunction had ever been issued and served on him. He is unfairly competing with petitioner's business, which is the same business although under different ownership as that with which in 1931 he was enjoined from competing. He is free to sell the precise type of cheese that petitioner is selling, which he in fact is doing, provided only that he refrain from deceiving or misleading the purchasing public into believing it is purchasing petitioner's cheese. But he is imitating petitioner's product and selling the same to dealers at a cut price, thereby making it to the dealers' interest to substitute his product, Berg-Ost, for Bond-Ost, petitioner's product. In George G. Fox Co. v. Glynn, 191 Mass. 344, 78 N.E. 89, 92, 9 L.R.A.,N.S., 1096, 114 Am.St.Rep. 619, the court said:

"It is not true that the wholesale dealers can successfully defend on the ground that they do not mislead or intend to mislead the retail dealers to whom they sell. It is enough to require an injunction, if they knowingly place an instrument of fraud in the hands of a retailer, with which he may deceive the public."

Here Berg has knowingly placed in the hands of retail dealers an instrument of fraud by which they may mislead and deceive the public. That Berg is actually deceiving or misleading the buying public, is demonstrated by the fact that the witness Lillian Karmen in shopping in eight retail stores asked for Bond-Ost and in six of the stores was handed Berg-Ost.

 In Broderick & Bascom Rope Co. v. Manoff, 41 F.2d 353, 354, the Circuit Court of Appeals for the Sixth Circuit had before it a contempt proceeding in which the respondent was charged with violation of an injunction involving the unfair use of petitioner's trade-mark "Autowline." The original defendant had been enjoined from using the same word only hyphenated "Au-Tow-Line." The respondent, Manoff, who was the chief owner and general manager of the original defendant against whom the injunction was issued, had subsequently gone into the same line of business using the descriptive name "Auto-Tow-Line." The court held that Manoff was not in the same position as a stranger and was therefore in contempt of court for violating the injunction, the court saying:

"We do not find it necessary to consider these broad questions (i. e., whether plaintiff had acquired a secondary meaning in its mark); we think Manoff was disqualified to claim the full competitive rights which might be open to a stranger. He was clearly privy to the former decree and bound by it as if he had been named as a party; the name Au-Tow-Line was adjudged to be plaintiff's valid trade-mark; he was enjoined from using it, and the effect of the injunction, of courts, was to enjoin also the use of any word in such close imitation or resemblance as to mislead the public;

it is obvious that the ordinary purchaser would be confused or misled by the similarity between Au-Tow-Line and Auto-Tow-Line, when prominently displayed as if the proprietary name of two substantially similar articles. To permit Manoff to continue his infringing business with merely this change in the characterizing name is to make the decree futile and to disparage the power of the court to give relief against trade larceny. The situation is the same as it was in Coca-Colo Co. v. Gay-Ola Co. [6 Cir.] 200 F. 720. * * * The defendant there, and Manoff here, had organized and built up a business based upon a fraudulent appropriation of what belonged to the plaintiff. To permit them to continue without interruption, and to the full scope of identity permitted to an honest competitor, would be to preserve for them a good will acquired through fraud. The due protection of trade-mark and similar rights requires that a competitive business, once convicted of unfair competition in a given particular, should thereafter be required to keep a safe distance away from the margin line—even if that requirement involves a handicap as compared with those who have not disqualified themselves."

I am convinced that petitioner through the various assignments set out in its petition acquired the trade-mark Bond-Ost and the good will accompanying it, together with the long-established cheese business of C. A. Carlson Company. Plaintiff in the assignments made to it did not take merely the trade-mark but in each instance took also the good will of the business in connection with which the mark was used, which is all that the statute requires. In Menendez v. Holt, 128 U.S. 514, 9 S.Ct. 143, 144, 32 L.Ed. 526, the Supreme Court held that good will " * * * must mean every positive advantage that has been acquired by the old firm in the progress of its business, whether connected with the premises in which the business was previously carried on, or with the name of the late firm, or with any other matter carrying with it the benefit of the business."

I come now to a consideration of whether Berg is entitled to use his own name in his business by using Berg-Ost as the distinguishing mark of his cheese. The courts have repeatedly held that one may be enjoined from the use of his own name under circumstances which would permit of such use resulting in unfair or fraudulent injury to another. Nims on Unfair Competition and Trade-Marks (Fourth Ed. 1947), states the rule as follows:

"Every man has a right to the use of his own name. That is the first principle. To this the law of unfair competition gradually is adding another—no man may use even his own name in such manner as to injure another unfairly or fraudulently in his business. 'While it is true that every man has a right to use his own name in his own business, it is also true that he has no right to use it for the purpose of stealing the good will of his neighbor's business, nor to commit a fraud upon his neighbor, nor to trespass upon his neighbor's rights or property; and while it is true that every man has a right to use white paper, it is also true that he has no right to use it for making counterfeit money nor to commit a forgery.' This is a classic, but often neglected statement of the basic rule of personal names."

In Brown Chemical Company v. Meyer, 139 U.S. 540, 11 S.Ct. 625, 627, 35 L.Ed. 247, the Supreme Court said:

" * * * The pill-boxes and pots (of ointment) of the latter were similar in form to, and were proven to have been copied from, those of the former. The Master of the Rolls in granting the injunction said: 'The defendant's name being Holloway, he has a right to constitute himself a vendor of Holloway's pills and ointment, and I do not intend to say anything tending to abridge any such right. But he has no right to do so with such additions to his own name as to deceive the public, and make them believe that he is selling the plaintiff's pills and ointments. The evidence in this case clearly proves that pills and ointments have been sold by the defendant, marked in such a manner that persons have purchased them of the defendant, believing that they were buying goods of the plaintiff.' The principle of this case was approved by this

court in the case of McLean v. Fleming, 96 U.S. 245 [24 L.Ed. 828], in which a person was enjoined from using his own name in connection with certain pills, upon the ground that they were put up in such form that purchasers exercising ordinary caution were likely to be misled into buying the article as that of the plaintiff."

In Allegretti v. Allegretti Chocolate Cream Co., 177 Ill. 129, 52 N.E. 487, 489, the Supreme Court of Illinois said:

"It is also contended by appellants that the scope of the injunction in this cause is too broad; that even if it be found the appellants have been guilty of fraudulent practices to divert to themselves the trade intended for appellee, yet the injunction can only restrain such fraudulent practices, and not the use of the name, it being contended that every natural person has the right to the free use of his own name in his own business. That every natural person has such right is undoubtedly the rule established by an unbroken line of decisions; yet that right, as is said in the case of Elgin Butter Co. v. Elgin Creamery Co., supra [155 Ill. 127, 40 N.E. 616], can only be exercised 'in the absence of any fraudulent or wrongful intention or act.'"

After carefully considering the pleadings and the briefs, and the evidence and listening to the arguments of counsel, I am of the opinion that Berg's imitation of the size and shape of petitioner's Bond-Ost cheese, and his use of the trade-mark Berg-Ost in conjunction therewith is a studied attempt to mislead and deceive the buying public. I believe that by the trade-mark Berg-Ost, Berg has used his own name in such a manner that ordinary purchasers have purchased Berg-Ost cheese believing they were purchasing petitioner's Bond-Ost cheese. Berg has the undoubted right to use his own name in any honest way, but here by designating his product as Berg-Ost cheese he has used his name in such a manner as to cause his product to be mistaken for petitioner's Bond-Ost cheese, to petitioner's injury. This he is not permitted to do. Berg's use of the trade-mark "Berg-Ost" and his imitation of the size and shape of petitioner's "Bond-Ost" is clearly a violation of the injunction of November 12, 1931, and therefore Berg is in contempt of court.

Findings of fact and conclusions of law in accordance with this opinion will be entered.